IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAR - 2 2012
Clerk, U.S District & Bankruptcy
Courts for the District of Columbia

EDWINA C. ROGERS                )
6035 Ramshorn Place             )
McLean, Virginia 22101          )
                                )
          Plaintiff,            )
     v.                         )
                                )   Case: 1:12-cv-00344
                                )   Assigned To : Collyer, Rosemary M.
STEVEN J. WOLIN, M.D.           )   Assign Date : 3/2/2012
5410 Connecticut Avenue, N.W.   )   Description: General Civil
Washington, D.C. 20015          )
                                )
          Defendant.            )
_____)

## COMPLAINT

COMES NOW THE PLAINTIFF, EDWINA C. ROGERS, by counsel, and moves this Court for entry of judgment in her favor, and against the Defendant, STEVEN J. WOLIN, M.D. and in support of such motion alleges and avers as follows:

### NATURE OF ACTION

1.  This is a civil action alleging defamation, civil conspiracy and intentional infliction of emotional distress is brought against the Defendant, Steven J. Wolin, M.D.

2.  This action is brought under the common law of the District of Columbia.

### PARTIES

3.  Plaintiff Edwina C. Rogers ("Ms. Rogers") is a resident and citizen of the Commonwealth of Virginia.

4.  Defendant Steven J. Wolin, M.D. ("Dr. Wolin") is a resident and citizen of the District of Columbia. Dr. Wolin is a Board certified psychiatrist licensed in the District of Columbia with an active practice in the District of Columbia.

1

5. Dr. Wolin also serves as a clinical professor of psychiatry at the George Washington University Medical School in Washington, D.C.

## JURISDICTION

6. This Court has jurisdiction over Ms. Rogers' claims under 28 U.S.C. § 1332(a).

7. This Court has subject matter jurisdiction over the diverse parties and because the matter in controversy exceeds the jurisdictional minimum.

8. This Court has personal jurisdiction over the parties.

## VENUE

9. Dr. Wolin is a resident of the District of Columbia and maintains an active psychiatry practice in this judicial district, specifically at 5410 Connecticut Avenue, N.W., Washington, D.C. 20015.

10. Dr. Wolin regularly conducts substantial business activity in this judicial district.

11. All causes of action in this Complaint arose in this judicial district.

12. Venue in this action is proper in this Court under 28 U.S.C. § 1391.

13. Venue over Ms. Rogers' claims is proper in this Court.

## BACKGROUND

*Ms. Rogers' Marriage to Mr. Rogers*

14. Edwina and Edward Rogers were lawfully married on November 4, 1989, in Washington, D.C.

15. On July 11, 1999, their son, Haley, was born.

16. On April 14, 2002, their daughter, Sabra, was born.

17. Mr. and Ms. Rogers live together in McLean, Virginia with their two children.

18. Ms. Rogers separated from Mr. Rogers in the same residence in September 2009 with the intent to seek a no-fault divorce (to share custody of the children and split martial assets equally).

19. Mr. Rogers threatened and vowed to Ms. Rogers and other third parties to destroy Ms. Rogers if she ever filed for divorce, even though they had been living separate lives for several years.

20. On August 9, 2010, Mr. Rogers filed the first of numerous lawsuits against Ms. Rogers. In this lawsuit Mr. Rogers asked that a divorce be granted to him due to Ms. Rogers' fault; that he be awarded sole legal and physical custody of the minor children with very limited and supervised visitation for the mother; that he be awarded child support; that he be awarded exclusive use of the material home; that he be given a special monetary award; and that he be awarded all attorneys' fees. This matter was filed in the Circuit Court of Fairfax County, CL No. 2010-11333.

21. In early July 2011, Mr. Rogers non-suited Case No. 2010-11333. However, on July 6, 2011, Mr. Rogers again filed for divorce based upon Ms. Rogers' alleged desertion and abandonment in September 2009. This divorce proceeding is currently pending in the Circuit Court of Fairfax County, CL No. 2011-9867.

22. Under the auspices of protection by judicial privilege, notwithstanding none existing under the circumstances, Mr. Rogers has made many materially false and misleading statements about Ms. Rogers to the children, this Court, Dr. Zuckerman, a Parent Coordinator, and staff at the children's school, Dr. Wolin, and others. Mr. Rogers

made these statements knowing them to be false, defamatory, outrageous and incendiary. The false statements were made with the express purpose of discrediting, defaming and "destroying" Ms. Rogers. These statements were made with the intent of, and had the effect of, injuring Ms. Rogers. By way of example, Mr. Rogers has repeatedly stated to multiple individuals that Ms. Rogers is a drunk, is mentally instable and psychotic, and has committed crimes.

23.     Mr. Rogers continues to live in the family home in McLean with Ms. Rogers and their two children.

24.     On October 1, 2010 and again on June 2, 2011, Mr. Rogers served Plaintiff's Answer and Objections to Defendant's First Interrogatories ("Interrogatory Response"). This Interrogatory response was prepared by Mr. Rogers, but not signed by Mr. Rogers, and more specifically, was not signed under Oath, as required by the Rules of the Virginia Supreme Court, in litigation proceedings in the Commonwealth of Virginia.

25.     In the Interrogatory Response, Mr. Rogers stated (1) that Ms. Rogers exhibited symptoms of mental instability, (2) that Ms. Rogers abused alcohol, (3) that Ms. Rogers was "cited on at least one occasion for driving under the influence and has damaged thousands of dollars' worth of property as a consequence of driving while intoxicated," (4) that Ms. Rogers stated to Mr. Rogers that "she had been diagnosed as psychotic and that she wanted to kill people," (5) that Ms. Rogers had an "arrest for drunk driving following an accident in which two cars were destroyed," (6) that Ms. Rogers has on more then one occasion "been too intoxicated to return home from a family Christmas party," (7) that due to alcohol, Ms. Rogers "collapsed on the floor at a

BGR [Mr. Rogers' firm] party in 2005," (8) that Ms. Rogers has "several symptoms of emotional/ psychological dysfunction," (9) that Ms. Rogers "has had incidents that stem from alcohol use ranging from a DUI [Driving Under the Influence] arrest with aggravating circumstances where two cars were totaled, fights with boyfriends at hotels where police had to be summoned, and having to lie on the floor due to intoxication at BGR events," (10) that Mr. and Ms. Rogers "had to cancel [their] annual family Christmas party in Alabama two years in a row because she was so drunk she could not come home on Dec. 23rd," (11) that Ms. Rogers "had been diagnosed with at least one psychotic episode," and (12) that Ms. Rogers said that she "want[ed] to kill people," (13) that the children stated that "Genny [Ms. Navas] was their real mom," (14) that the children's teachers told Mr. Rogers that "they had attempted to discuss their concerns with Edwina, without success, and that [Mr. Rogers] needed to do something," (15) Ms. Rogers has exhibited paranoid symptoms, (16) that Ms. Rogers has exhibited severe mood swings accompanied by belligerent/bellicose manifestations, (17) that Ms. Rogers has engaged in "overtly romantic displays of affection with other men, in the presence of our children," (18) that Ms. Rogers has acknowledged extra-marital relationships of a sexual nature in the children's presence, (19) that Ms. Rogers solicited strangers through a foreign online dating service, (20) that "Edwina has neglected to foster a typical maternal bond relationship with the children," (21) that Ms. Rogers has engaged in bizarre tirades unleashed against the son while simultaneously sequestering the daughter, (22) that the Rogers' "children have witnessed her erratic behavior, vindictiveness, manipulation and mean-spirited retribution," (23) that "Haley is terrified of his mother," (24) that Ms. Rogers has stated "a desire to live separately from the children," (25) that

Ms. Rogers "has inexplicable episodes of fainting and/or vertigo that make her a danger to herself and others," (26) that Ms. Rogers "made a false report regarding guns in the house," (27) that "Edwina has psychologically abused Haley and isolated and intimidated Sabra," (28) that "in 2007 a complete stranger got her [Ms. Rogers] a room in a Rodeway Inn where she spent most of the next day recovering," (29) that Ms. Rogers "speaks with a fake foreign accent," (30) that Ms. Rogers "does not wake the children up or put them to bed," (31) that Ms. Rogers "does not play with them or express any interest or pride in their accomplishments, in school or elsewhere," and (32) that Ms. Rogers has failed "to ever play a role as teacher of facts or character.'"

26.     These statements were false, Mr. Rogers knew them to be false at the time he made them and were made with the intent to injure Ms. Rogers, and to inflict significant and irreparable damage to Ms. Rogers' reputation, as well as cause severe emotional distress to Ms. Rogers.

27.     On June 2, 2011, Mr. Rogers served Plaintiff's Second Supplemental Answers to Defendant's First Interrogatories, which contained a reiteration of these statements by Mr. Rogers. Again, this interrogatory response was prepared by, but not signed by Mr. Rogers, and more specifically, not signed under Oath.

28.     Because the interrogatories were not signed under oath or otherwise by Mr. Rogers, the protections against perjury and other safeguards, typically present in a judicial proceeding, were not present with regard to the false statements made by Mr. Rogers in his interrogatory responses.

29. Without Mr. Rogers' signature, and without a signature under oath, the interrogatory responses are not entitled to the public policy considerations underlying judicial privileges and immunities, and no such privileges or immunities apply.

30. On October 26, 2010, the Court entered a Consent Order appointing Dr. William Zuckerman ("Dr. Zuckerman") to conduct an "independent custody evaluation."

31. Dr. Zuckerman and/or his associate, Dr. Joanna Spiro ("Dr. Spiro"), conducted interviews of Mr. Rogers, Ms. Rogers, their children, and many third parties between October 15, 2010 and May 18, 2011, including Dr. Wolin.

32. Dr. Zuckerman prepared an undated 112-page report containing a summary of statements made to him, his conclusions and his recommendations ("Zuckerman Report").

33. The Zuckerman Report was not filed with the Court and not subject to safeguards surrounding filings or statements made in a judicial proceeding. The statements made to Dr. Zuckerman and/or Dr. Spiro by Mr. Rogers and third parties were not made under oath, were not subject to the penalties of perjury and were not witnessed or subject to cross examination by either party to the divorce litigation. The Report does not enjoy the public policy considerations underlying judicial privileges and immunities.

34. In the report, Dr. Zuckerman listed numerous negative statements made by Mr. Rogers about Ms. Rogers, including false and defamatory statements.

35. Mr. Rogers stated that Ms. Rogers was uncooperative with seeing a "family psychiatrist," whom he identified as Dr. Wolin, the "family" psychiatrist, and stated that Ms. Rogers finally agreed to see Dr. Wolin in August 2010.

36. Dr. Wolin was a psychiatrist whom Mr. Rogers independently engaged to speak with his children from May to July 2010. In reality, Ms. Rogers was not told of the children or Mr. Rogers' involvement with Dr. Wolin, but once she learned about Dr. Wolin from her daughter, Ms. Rogers visited Dr. Wolin once on June 15, 2010, and once with her sister on June 30, 2010, but only in the context of discussing the children, and never for purposes of being a patient or receiving any diagnosis. At no time was there any psychiatrist-patient relationship discussed or entered into between Ms. Rogers and Dr. Wolin.

37. During the evaluation, Dr. Zuckerman and/or Dr. Spiro talked to Dr. Wolin.

38. Specifically, Dr. Zuckerman and/or Dr. Spiro talked to Dr. Wolin by telephone on March 4, 2011, during which Dr. Wolin stated that he saw Ms. Rogers on two occasions, once by herself; observed Ms. Rogers to be "quite labile, easily upset," "tending to blame the children for the problems that were going on," and stated that Ms. Rogers "appeared to him to have rather prominent narcissistic traits and traits of Borderline Personality Disorder."

39. Dr. Wolin further told Dr. Zuckerman and/or Dr. Spiro that Dr. Wolin did not "trust her [Ms. Rogers] to be alone with the children," and that "she can be dangerous" and suggested Ms. Rogers be supervised when with the children.

40. Dr. Wolin's statements were false, and he made these statements knowing them to be false and with the intent to injure Ms. Rogers.

41. Further, Dr. Wolin held himself out to be in a position to medically and psychologically diagnose Ms. Rogers and advise Dr. Zuckerman and Dr. Spiro with

respect to Ms. Rogers' medical and mental condition, which was not something Dr. Wolin could professionally or medically do.

42. As a third party, Dr. Wolin's statements were not spoken or written within a legal proceeding and are not entitled to any qualified or absolute immunity or judicial privilege.

43. Mr. Rogers has paid Dr. Wolin a considerable amount of money, well in excess of $20,000, in influence and encourage Dr. Wolin to engage in such unauthorized and defamatory conduct.

## COUNT ONE - DEFAMATION

44. The foregoing allegations are incorporated as if realleged herein.

45. Dr. Wolin made false and defamatory statements about Ms. Rogers to Dr. Zuckerman and/or Dr. Spiro as specifically set forth in ¶¶ 38-39 of this Complaint.

46. These statements were patently and demonstrably false, constituted fact or factually laden opinion which can be substantially proven false, and constituted defamation.

47. Dr. Wolin falsely stated to Dr. Zuckerman and/or Dr. Spiro that Ms. Rogers was labile, tended to blame her children for problems, has rather prominent narcissistic traits, and has traits of Borderline Personality Disorder.

48. Dr. Wolin falsely stated and/or implied to Dr. Zuckerman and/or Dr. Spiro that Ms. Rogers could not be trusted to be alone with her children, was dangerous and should be supervised when with her children.

49. All of these statements, as set forth above, were made in order to discredit Ms. Rogers, and to justify Mr. Rogers' (Dr. Wolin's patient) requested termination of Ms. Rogers' parental rights.

50. Dr. Wolin made these materially false and misleading statements about Ms. Rogers, as set forth above, knowing the claims were false, defamatory and, particularly in the context of the communications, outrageous and incendiary; or with reckless disregard as to whether the statements were false, defamatory and/or outrageous and incendiary.

51. These statements were made with the intent of, and had the effect of, injuring Ms. Rogers, suggesting she was mentally instable, unfit to parent her children and should not be allowed to visit her children without supervision.

52. No judicial privilege or immunity attaches to these statements because they were not made during a judicial or quasi-judicial proceeding, and no reasonable person can doubt the statements' impropriety.

53. Any privilege connected to these statements was waived because (a) Dr. Wolin knew these statements were false or made these statements with reckless disregard as to whether the statements were false or not; (b) the statements were unnecessarily insulting; (c) the language used was stronger or more violent than was necessary under the circumstances; and/or (d) the statements were made because of malice, hatred, ill will or a desire to injure or irreparably injure Ms. Rogers, rather than a fair comment on the subject.

54. Upon information and belief, Dr. Wolin's defamatory statements were also published to additional third parties in the form of Dr. Zuckerman's report.

55. There was no factual basis to support the defamatory statements as stated.

56. These materially false and misleading statements were made with the intent to harm, and did harm, the reputation, integrity and competency of Ms. Rogers.

57. Such comments and actions served to permanently damage Ms. Rogers.

58. The conduct of Dr. Wolin was malicious, wanton and evinced a willful and conscious disregard for Ms. Rogers' rights and reputation, and further was accomplished in a reckless and grossly negligent manner.

59. As a direct and proximate result of the defamation, Ms. Rogers has suffered and will continue to suffer great damages, emotional distress and physical injury, including damaged personal reputation, loss of social interaction, embarrassment, humiliation, inconvenience, severe mental anguish, stress, pain and suffering, and loss of enjoyment of life.

60. Due to the severity of Dr. Wolin's defamatory conduct, Ms. Rogers is also entitled to punitive damages.

## COUNT TWO - COMMON LAW CONSPIRACY

61. The foregoing allegations are incorporated as if realleged herein.

62. Dr. Wolin conspired with Mr. Rogers and Ms. Navas, and with others, causing, emotional and physical distress and loss to Ms. Rogers.

63. Dr. Wolin conspired with Mr. Rogers and Ms. Navas conspired to fabricate false accusations and attribute false personality disorders to Ms. Rogers so that Mr. Rogers would be awarded full custody of the children in the divorce proceedings, as well as child support, and exclusive use and possession of their home and other legal relief.

64. These acts of conspiracy, made under the false presumption of a cloak of privilege and immunity, constituted improper methods as set forth herein, and included, among other things Dr. Wolin conspiring with Mr. Rogers and Ms. Navas to allege or imply that certain conduct by Ms. Rogers was improper, illegal, inappropriate, or made her an unfit mother, knowing it was not or that the conduct was not true or not accurately reported, conspiring to defame Ms. Rogers by suggesting or implying she was not credible and is an unfit mother whose conduct would be harmful to the children, scheming to have Ms. Rogers portrayed as an alcoholic with poor judgment (driving under the influence) with violent tendencies, conspiring to create pretenses for alleging such behavior and mental conditions against Ms. Rogers in order to diminish her credibility with medical professionals and the Court handling the divorce proceedings, conspiring to injure Ms. Rogers' reputation, to portray Ms. Rogers in a false and defamatory light, to claim that Ms. Rogers engaged in illegal activity, and to interfere with Ms. Rogers expectancies and rights as a parent.

65. As set forth in detail in this Complaint, Dr. Wolin acted for his own personal motive in conspiring to injure Ms. Rogers. Dr. Wolin's motive was financial and business related.

66. The conduct of Dr. Wolin was (and is) without legal justification and for an unlawful purpose.

67. The actions of Dr. Wolin, in concert with Mr. Rogers and Ms. Navas were willful, intentional, and malicious, and evinced a conscious disregard for the rights of Ms. Rogers, were aimed specifically and maliciously at causing damage to Ms. Rogers, and did cause Ms. Rogers injury and damage.

68. As a direct and proximate result of the actions of Dr. Wolin, Ms. Rogers has suffered and will continue to suffer severe emotional distress and physical injury. Such injury includes loss of reputation, lost career opportunities, loss of emotional fulfillment, loss of social interaction, advancement, other past pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, stress, pain, suffering, loss of enjoyment of life and other nonpecuniary injury.

69. Due to the severity of Dr. Wolin's conduct, Ms. Rogers is entitled to punitive damages.

## COUNT THREE -
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

70. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

71. The actions and conduct of Dr. Wolin, as set forth above, were intentional or reckless in that he had the specific purpose of inflicting emotional distress on Ms. Rogers, fully intended his conduct, and knew or should have known that severe emotional distress would likely result.

72. Dr. Wolin's conduct was outrageous and intolerable in that it offends generally accepted standards of decency and morality.

73. This conduct by Dr. Wolin was actuated by malice, spite, and ill will; was willful and wanton; and evinced conscious disregard for the rights of Ms. Rogers.

74. As a proximate result of Dr. Wolin's conduct, Ms. Rogers has suffered and continues to suffer severe emotional distress.

75. As a direct and proximate result of the behavior of Dr. Wolin towards Ms. Rogers, Ms. Rogers has suffered severe emotional distress with physical manifestations.

Such physical manifestations include, but are not limited to, anxiety (including unwittingly holding her breath), grinding and gnashing teeth (resulting in cracks in two teeth), symptoms of TMJ, hyperventilating, constant stomach cramps, frequent diarrhea, muscle tension, high blood pressure, irritability with friends and family, inconsolable crying, depression, feelings of hopelessness and helplessness, isolating herself and avoiding social relationships and situations, stress, insomnia, inability to focus and think clearly, and other physical, psychological and physiological maladies.

76. As a direct and proximate result of the Dr. Wolin's actions, Ms. Rogers has suffered and continues to suffer severe emotional distress and physical injury. Such injury includes pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, medical expenses, other past pecuniary losses, future pecuniary losses, and other non pecuniary losses.

77. Due to the severity of Dr. Wolin's conduct, Ms. Rogers is entitled to punitive damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff EDWINA C. ROGERS requests that this Court enter judgment in her favor, and against the Defendant, STEVEN J. WOLIN, M.D. on the above Counts One through Three, and further:

(a) Award Ms. Rogers compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on each of the above-stated Counts One through Three; and in addition

(b) Award Ms. Rogers punitive and exemplary damages, to be determined by a jury, on Counts One through Three; and in addition

(c) Award Ms. Rogers reasonable attorneys' fee and costs of this action including expert fees, pursuant to D.C. Code § 2-1403.13(a)(1)(E) as provided in D.C. Code § 2-1403.16(b); and in addition

(d) Revoke all permits, licenses, franchises, benefits, exemptions or advantages issued by or on behalf of the government of the District of Columbia to Dr. Wolin, pursuant to D.C. Code § 2-1402.67; and in addition

(e) Award Ms. Rogers such other and further relief as may be appropriate under the circumstances.

## JURY DEMAND

**PLAINTIFF EDWINA C. ROGERS DEMANDS A TRIAL BY JURY.**

March 2, 2012

Respectfully submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
ebredehoft@cbcblaw.com
Carla D. Brown
D.C. Bar No. 474097
cbrown@cbcblaw.com
CHARLSON BREDEHOFT COHEN
  BROWN & SAKATA, P.C.
11260 Roger Bacon Drive, Ste. 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

Counsel for Plaintiff,
*Edwina C. Rogers*